IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GREGORY D. KNIGHT,                          :

      Petitioner,                          :

v.                                          :       CIVIL ACTION NO. 10-00608-KD-N

TONY PATTERSON,                             :

      Respondent.                          :


REPORT AND RECOMMENDATION

      This action was referred for report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B), Local Rule 72.2(c)(4), and Rule 8 of the Rules Governing Section 2254 Cases.

Petitioner, Gregory D. Knight, a state prisoner currently in the custody of Respondent, has

petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254, challenging

the validity of his 2001 conviction in the Circuit Court of Baldwin County, Alabama, for capital

murder, for which he was sentenced to life in prison without the possibility of parole.[1] (Doc. 1 at

---

[1] Petitioner was initially sentenced to death for the murder of Latisha Knight, an offense
made capital under Alabama Code § 13A-5-40(a)(17) (1975), because the victim was in a motor
vehicle.  On appeal, the Alabama Court of Criminal Appeals remanded Petitioner's case for the
circuit court to hold a new penalty-phase hearing and to enter a new sentencing order after
weighing the appropriate aggravating circumstances and mitigating circumstances per the court's
opinion.  (Doc. 9, att. 15 at 42). On remand, the state chose not to pursue the death penalty, and
Knight was sentenced to life imprisonment without the possibility of parole.  (Doc. 9, att. 12 at
14; att. 21 at 1).

2).  Following a careful review of the petition and record, the undersigned finds that an

evidentiary hearing is not warranted on the issues.[2]  <u>See</u> 28 U.S.C. § 2254(e)(2).

<u>FINDINGS OF FACT AND PROCEEDINGS</u>

The Alabama Court of Criminal Appeals found the facts of this case to be as follows:[3]

> The State's evidence tended to show the following.  On June 17,
> 2000, Knight stabbed his wife to death while the two were in a
> motor vehicle.  At the time of the murder Knight and Latisha had
> been married for two years but were separated.  The couple had
> one child together and Latisha had another child while Knight was

---

[2]Because Petitioner filed his federal habeas petition after April 24, 1996, this case is
governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  "AEDPA expressly
limits the extent to which hearings are permissible, not merely the extent to which they are
required."  <u>Kelley v. Secretary for Dep't of Corrs.</u>, 377 F.3d 1317, 1337 (11th Cir. 2004).  The
legal standard for determining when an evidentiary hearing in a habeas corpus case is allowed is
articulated in 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in
> State court proceedings, the court shall not hold an evidentiary
> hearing on the claim unless the applicant shows that–
> **(A)** the claim relies on–
>> **(i)** a new rule of constitutional law, made retroactive to
>> cases on collateral review by the Supreme Court, that was
>> previously unavailable; or
>> **(ii)** a factual predicate that could not have been previously
>> discovered through the exercise of due diligence; and
> **(B)** the facts underlying the claim would be sufficient to establish
> by clear and convincing evidence that but for constitutional error,
> no reasonable factfinder would have found the applicant guilty of
> the underlying offense.

Petitioner has failed to establish that an evidentiary hearing is warranted in this case.

[3]AEDPA directs that a presumption of correctness be afforded factual findings of state
courts, "which may be rebutted only by clear and convincing evidence."  <u>Bui v. Haley</u>, 321 F.3d
1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)).  "This presumption of correctness
applies equally to factual determinations made by state trial and appellate courts."  <u>Id.</u> (citing
<u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).  These facts are recited in the opinion of the
Alabama Court of Criminal Appeals on Petitioner's direct appeal of his conviction and sentence.
<u>See</u> <u>Knight v. State</u>, 907 So. 2d 470, 472-73 (Ala. Crim. App. 2004).

serving a prison sentence in Florida. FN1  On the day before the murder Knight asked Latisha if he could come and visit the children.  Latisha said that he could not.  Later that day Knight saw Latisha and his cousin out together.  Knight thought his wife and cousin were having an affair, and he became angry.

FN1  Knight was not the father of the second child, who was seven months old at the time of this offense.

The next day Latisha came over to Knight's father's house and asked Knight to come and talk with her.  When Knight left the house he took a butcher knife from the kitchen with him.  As the two were driving in Latisha's car Latisha received a telephone call from Knight's cousin.  Knight became angry, pulled out the butcher knife, and ordered Latisha to stop the car.  She complied.  Knight then stabbed Latisha 32 times.  He dragged her body into a nearby wooded area and left the scene in her car.  The coroner testified that some of the wounds inflicted on Latisha were 12 inches deep and penetrated her heart, lungs, liver, spleen, aorta, and face.  Latisha's seven-month-old child was in the backseat during the stabbing.

After Knight disposed of Latisha's body he drove Latisha's car to Joseph and Jennifer Watson's house.  The Watsons testified that when Knight arrived he was covered in blood and he asked them for a change of clothes.  Jennifer Watson testified that she noticed that a baby was in the car and she convinced Knight to leave the baby with them.  Knight telephoned his stepmother and she picked him up at the Watsons.  After Knight left the Watsons telephoned the police.  Knight was arrested at his father's house.  He confessed to stabbing Latisha to death and led police to where he had disposed of her body.

Knight pleaded not guilty by reason of mental disease or defect. § 13A-3-1, Ala. Code 1975.  At trial Knight presented the testimony of a clinical forensic psychologist, Dr. Robert Anthony DeFrancisco.  Dr. DeFrancisco testified that Knight, at the time of the murder, had a brief reactive psychosis where his emotions overtook his reason.  He said that this would make him feel justified in killing Latisha.  Dr. DeFrancisco classified the crime as a "crime of passion."

The jury convicted Knight of killing Latisha while she was in a motor vehicle, a murder defined as capital by § 13A-5-40(a)(17), Ala. Code 1975.

(Doc. 9, att. 15 at 2-4).

In August 2001, Petitioner was tried and convicted of capital murder in the Circuit Court of Baldwin County, Alabama, and sentenced to death. (Doc. 9, att. 1 at 7; att. 15 at 4-6). On appeal, the Alabama Court of Criminal Appeals remanded Petitioner's case for the circuit court to hold a new penalty-phase hearing and to enter a new sentencing order after weighing the appropriate aggravating circumstances and mitigating circumstances per the court's opinion. (Doc. 9, att. 15). On remand, the state chose not to pursue the death penalty, and Knight was sentenced to life imprisonment without the possibility of parole. (Doc. 9, att. 12 at 14; att. 21 at 1). The Alabama Court of Criminal Appeals affirmed Petitioner's new sentence on February 25, 2005. (Doc. 9, att. 16 at 2). The court issued its certificate of judgment on March 16, 2005. (Doc. 9, att. 17).

On December 7, 2005, Petitioner filed a petition for post-conviction relief under Rule 32 of the <u>Alabama Rules of Civil Procedure</u>. (Doc. 9, att. 18 at 6-16). On August 24, 2009, Petitioner filed a "Motion to Amend Petition," raising one additional Rule 32 claim. (<u>Id.</u> at 67-71). On September 23, 2009, a hearing was held on Petitioner's Rule 32 petition at which both of Petitioner's counsel testified. (Doc. 9, att. 18 at 87-115). The Mobile County Circuit Court denied Petitioner's Rule 32 petition on December 17, 2009. (<u>Id.</u> at 78-81). The Alabama Court of Criminal Appeals affirmed that denial on June 18, 2010. (Doc. 9, att. 21). Petitioner's application for rehearing was overruled on July 9, 2010, and a certificate of judgment was issued on July 28, 2010. (Doc. 9, atts. 23, 24).

Subsequently, however, the Alabama Court of Criminal Appeals recalled the certificate of judgment on August 17, 2010, after Petitioner placed a petition for writ of certiorari in the prison mailbox on July 23, 2010. (Doc. 9, atts. 25, 26). The Alabama Supreme Court denied

Petitioner's petition for writ of certiorari and issued its certificate of judgment on October 8, 2010.  (Doc. 9, att. 27).

On November 5, 2010, Petitioner filed the instant petition for a writ of habeas corpus setting forth seventeen claims in support of his request for habeas relief.  (Doc. 1).  On February 18, 2011, Respondent filed an Answer to the petition and, on April 15, 2011, Petitioner filed a Response thereto.  (Docs. 9, 13).

<u>DISCUSSION</u>

Following a careful review of Knight's petition, the undersigned finds, for the reasons set forth below, that Petitioner is not entitled to habeas relief on the basis of any of his seventeen claims.

I.  <u>Claims One and Two</u>

In his first claim, Petitioner asserts that his due process rights were violated when the trial court erred in failing to grant his motion for a mistrial after the prosecutor elicited allegedly improper hearsay evidence of Petitioner's prior bad acts.  (Doc. 1 at 14).   In his second claim, Petitioner contends that he was denied due process when the trial court failed to instruct the jury on heat-of–passion manslaughter as a lesser included offense of capital murder.  (Doc. 1 at 15). Respondent counters that these claims are procedurally defaulted, as they were raised in Petitioner's direct appeal before the Court of Criminal Appeals, but Petitioner failed to file a petition for writ of certiorari with the Alabama Supreme Court as required to fully exhaust state court remedies.

While it does appear that Petitioner failed to fully exhaust these claims in the state courts,[4] under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  See also Thompson v. Secretary for Dep't of Corrs., 517 F.3d 1279, 1283 (11th Cir. 2008) ("We may, however, deny Petitioner's petition for habeas relief on the merits regardless of his failure to exhaust the claim in state court.") (citing 28 U.S.C. § 2254(b)(2)).

A.   Claim One: Trial Court Erred in Failing to Grant Mistrial

Although he did not properly exhaust the issue, Petitioner did present his first due process issue in his direct appeal to the Alabama Court of Criminal Appeals, and in its memorandum opinion rejecting Petitioner's claims, the court stated:

> Knight argues that the circuit court erred in failing to grant his motion for a mistrial after the district attorney elicited allegedly improper hearsay evidence of Knight's prior bad acts.  Knight asserts that this hearsay evidence was not admissible and that its admission prejudiced him.
>
> During Officer James Brown's testimony, the prosecutor asked Brown about an earlier domestic dispute between Knight and his wife where police had been called to the Knight residence.  The following occurred:
>
> "Q [Prosecutor]: Was there a report of any sort of weapon?

---

[4] The exhaustion doctrine requires that a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In Alabama, the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to the Alabama Court of Criminal Appeals, and an application for discretionary review by the Alabama Supreme Court.  See Ala. R. App. P. 4, 39, 40.

"[Defense counsel]:  Objection, Judge.

"The Court: I sustain the objection."

"Q [Prosecutor]: Who was the other person that was to have been involved in the fight?

"[Defense counsel]: Objection, Judge.  May we approach?

"The Court:  Yes, sir.

"[Defense counsel]: Judge, the prosecutor has asked three questions in a row that call for hearsay.  She's clearly trying to testify by her own questions as to what happened.  I would move at this time for a mistrial based upon improper questions and prosecutorial misconduct.

"The Court:  I deny the motion for a mistrial.  I'll allow the officer to testify as to what he observed but not what the victim told him."

(R. 1011-12.)   Knight argues that this line of questioning was prejudicial because it implied that Knight had been violent toward the victim before the murder.

Knight relied on a defense of insanity and introduced the testimony of a clinical forensic psychologist.  In rebuttal, the State introduced the testimony of Officer Brown and two of the victim's friends, Monica Absher and Scotty Conway, concerning a prior domestic dispute between the victim and Knight when police had been called to the Knight home.  Officer Brown testified that in March 2000, just three months before Latisha's murder, police were called to the Knight apartment.  Brown testified that when he arrived Latisha had marks on her arms and neck.  Another officer, Officer Benjamin Burke, testified that in March 2000 he arrested Knight on a domestic-violence complaint and when he searched the car Knight was driving he recovered a knife.   Absher and Conway testified that they were with the victim at the time of the March 2000 domestic disturbance.  They said Knight had kicked in the apartment door and that he had knocked out the windshield in Latisha's car.

We have stated, "'A motion for a mistrial is a drastic remedy that should be used only to prevent manifest injustice.  The ruling of the trial court on the motion will not be reversed unless there is a clear showing of abuse of discretion.'"   <u>Patterson v.</u>

State, 845 So. 2d 861, 866 (Ala. Crim. App. 2002), quoting Smith v. State, 745 So. 2d 284, 292-93 (Ala. Crim. App. 1998).

Here, the State introduced evidence of Knight's prior acts of violence toward the victim to rebut his insanity defense.  As we stated in Burnett v. State, 518 So. 2d 235 (Ala. Crim. App. 1987):

> "We find that the testimony was relevant to rebut appellant's insanity defense.  We find in [Charles W. Gamble,] McElroy's [Alabama Evidence], § 69.01(10) [3d ed. 1977)], the following:
>
>> "'If an accused, pleading not guilty by reason of insanity, introduces evidence warranting a finding of the truth of such plea, the state may prove his commission of other crimes as tending to show that he was not demented and that his commission of the now-charged crime was the offspring of a wicked propensity, rather than a diseased mind.  Allowing the proof of such prior crimes is generally justified upon the basis of the rule that, in a plea of insanity, the prosecution can operate under the wide latitude theory in bringing out all the acts and declarations of the defendant.  The only limiting factor upon this rule is the holding that the acts, declarations and conduct of the accused inquired about must have a tendency to shed light on his state of mind when the act for which he is being tried was committed.'  (Footnotes omitted, emphasis in original.)
>
> "For several cases recognizing this limitation, see Ex parte Miller, 460 So. 2d 228 (Ala. 1984); Nichols v. State, 276 Ala. 209, 160 So. 2d 619 (1964); Barbour v. State, 262 Ala. 297, 78 So. 2d 328 (1954).  We also find in McElroy's, § 61.01(7):
>
>> "'The courts have adhered to the wide latitude rule relating to the

8

admissibility of the conduct and condition of a criminally accused offered in support of his plea of insanity.   This wide latitude has encompassed many forms of conduct and conditions which the trial courts have held are relevant to show his mental incapacity at the time in issue.   This same wide latitude has been exercised in the decisions relating to the admissibility of the conduct and condition of the accused offered by the state in opposition to the accused's plea of insanity.' (Footnote omitted.)

"See, e.g., Watts v. State, 282 Ala. 245, 210 So. 2d 805 (1968); Nichols v. State, supra; Grammar v. State, 239 Ala. 633, 196 So. 268 (1940).

"'Evidence of the prosecution tending to rebut a defense will not be excluded because it also tends to show the commission of another crime by the accused.   Thus, … where the accused asserted the defense of insanity, evidence which tended to show that he was sane was admissible even though it also tended to show that he was guilty of another crime.'

"Wharton's Criminal Evidence § 258 (C. Torcia 13th ed. 1972) (footnote omitted)."

518 So. 2d at 240.   See also 1 Charles W. Gamble, McElroy's Alabama Evidence § 61.01(8) (5th ed. 1996).   The Alabama Rules of Evidence, adopted effective January 1, 1996, address a similar provision in Rule 405(b), Ala. R. Evid.   That Rule states:   "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct."   "This represents conventional common law doctrine in both Alabama and the United States as a whole."   Advisory Committee's Notes, Rule 405(b).   The evidence concerning the specific acts of prior violence toward the victim was admissible to show a "course of

conduct" that tended to indicate that the violence toward the victim that resulted in her death was not an isolated incident.  See Prophitt v. State, 183 Ga. App. 332, 333, 358 S.E. 2d 892, 893 (1987).

Knight argues that the testimony of the officers called for inadmissible hearsay and that it should have been excluded. However, even if the evidence was hearsay, it was rendered harmless when two eyewitnesses to the domestic dispute, Absher and Conway, testified to the events as they observed them in March 2000.  If there was error it was harmless.  "'The erroneous admission of evidence that is merely cumulative is harmless error.'"  Ex parte Harris, [Ms. 1020899, March 5, 2004] __So. 2d __, __ (Ala. 2004), quoting Dawson v. State, 675 So. 2d 897, 900 (Ala. Crim. App. 1995).

(Doc. 9, att. 15 at 7-13) (footnote omitted).

Having considered this issue de novo, the Court is satisfied that Petitioner has failed to show that he is entitled to habeas relief on this basis.

"A mistrial should be granted if the defendant's substantial rights are prejudicially affected," which occurs "when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different." United States v. Denham, 437 Fed. Appx. 772, 775 (11th Cir. 2011) (quoting United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007)). This determination is made "in the context of the entire trial and in light of any curative instruction." Id. Because the district court "is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury," the denial of a motion for a mistrial is reviewed for an abuse of discretion. Id. (quoting United States v. Emmanuel, 565 F.3d 1324, 1334 (11th Cir.), cert denied, —— U.S. ——, 130 S. Ct. 1032, 175 L. Ed. 2d 632 (2009)) (quotation marks omitted).

As the Alabama Court of Criminal Appeals noted, if there was any hearsay, it was made harmless by additional witness testimony of prior domestic disputes between Petitioner and the

victim.  It was not error for the trial court to deny Petitioner's motion for a mistrial.  Therefore,

Petitioner is not entitled to habeas relief on the basis of Claim One.

B.    Claim Two: Due Process Violation when Trial Court would not instruct on Heat-of-
       Passion Manslaughter as Lesser Included Offense of Capital Murder

Petitioner also presented Claim Two, that he was denied due process when the trial court

failed to instruct the jury on heat-of–passion manslaughter as a lesser included offense of capital

murder, to the Alabama Court of Criminal Appeals who rejected his claim, stating the following:

> Knight argues that the circuit court erred in failing to instruct
> the jury on heat-of-passion manslaughter as a lesser-included
> offense of capital murder.  Knight argued at trial that he killed his
> wife in the "heat-of-passion" after she received a telephone call
> from the man he thought she was having an affair with.  He
> contends that he was entitled to a jury instruction on heat-of-
> passion manslaughter based on this Court's holding in Anderson v.
> State, 507 So. 2d 580 (Ala. Crim. App. 1987).  He also relies on a
> New Jersey case, State v. Vigilante, 257 N.J. Super. 296, 608 A.2d
> 425 (1992), that, he argues, acknowledged that "heat of passion
> can be generated by a course of conduct rather than a single
> incident."  (Knight's brief at page 30.)

> According to § 13A-6-2(b), Ala. Code 1975, a person is not
> guilty of murder if "he was moved to act by a sudden heat of
> passion caused by provocation required by law, and before there
> had been a reasonable time for the passion to cool and for reason to
> reassert itself."

> The Alabama Supreme Court first recognized the legal
> principal addressed in § 13A-6-2(b), Ala. Code 1975, in 1893:

>> "Where one person detects another in the act of
>> adultery with his wife, and he immediately slays the
>> adulterer or his wife, as a matter of law, the
>> provocation is sufficient to reduce the killing to
>> manslaughter.  The law does not declare that any
>> thing less than actual sexual intercourse is a
>> sufficient provocation, as a matter of law, to reduce
>> the offense from murder to manslaughter."

Hooks v. State, 99 Ala. 166, 168, 13 So. 767, 768 (1893).  This principle was reaffirmed by the Alabama Supreme Court in Brunson v. State, 212 Ala. 571, 103 So. 664 (1925).

However, in Anderson v. State, 507 So. 2d 580 (Ala. Crim. App. 1987), this Court, departing from long-established precedent, held that an accused was entitled to a jury instruction on heat-of-passion manslaughter based on his testimony that before he killed his wife he had visualized her nude standing by the bed of another man.  This Court stated, "There was … evidence, if believed by the jury, to support a reasonable theory that the death was caused due to a sudden heat of passion caused by provocation recognized by law and, hence, a charge under § 13A-6-3(a)(2) would have also been appropriate."  507 So. 2d at 583.  Anderson case contained no discussion of whether the facts in that case constituted sufficient legal provocation for the killing; indeed, it was a radical departure from prior Alabama case law.

This Court acknowledged in Biggs v. State, 441 So. 2d 989 (Ala. Crim. App. 1983), that there was little law in Alabama concerning what, other than catching a spouse in the act of adultery, constitutes sufficient legal provocation for a heat-of-passion killing.  The Biggs Court held that admissions of infidelity by one spouse to another were not sufficient to constitute legal provocation.  We stated:

> "Although it is firmly established in Alabama that if one party finds his or her spouse in the act of adultery, the subsequent killing of either the offending spouse or the paramour is deemed, as a matter of law, to be caused by sufficient provocation.  Hooks v. State, 99 Ala. 166, 13 So. 767 (1893).  No reported Alabama case has been decided on the basis that a spouse's admission of infidelity may also constitute adequate provocation for a 'heat of passion' killing.  See Farr v. State, 54 Ala. App. 80, 304 So. 2d 898 [(1974)], McNeil v. State, 102 Ala. 121, 15 So. 352 [(1894)].

> "To constitute adequate legal provocation, it must be of a nature calculated to influence the passions of the ordinary, reasonable man.  Other than discovered adultery, courts have reached different conclusions as to what factual situations are embraced within this doctrine.   See

Commentary, § 13A-6-3, Code of Alabama 1975. See also Annot., 93 A.L.R. 3d 920 (1979).

"The well established rule in Alabama is that mere words, no matter how insulting or abusive, cannot reduce a killing to manslaughter. <u>Watson v. State</u>, 82 Ala. 10, 2 So. 455 (1886). Appellant argues, however, that his wife's admission of past adulterous affairs, along with other degrading statements, constituted sufficient provocation to support a manslaughter verdict. Some other jurisdictions which follow the traditional rule that offensive statements are insufficient as a matter of law to support a finding of manslaughter do recognize that words conveying information may be sufficient provocation. <u>People v. Rice</u>, 351 Ill. 604, 184 N.E. 894 (1933); <u>People v. Ahlberg</u>, 13 Ill. App. 3d 1038, 1041-1042, 301 N.E. 2d 608 (1973); <u>People v. Poole</u>, 159 Mich. 350, 353, 123 N.W. 1093 (1909); <u>Haley v. State</u>, 123 Miss. 87, 85 So. 129 (1920); <u>State v. Grugin</u>, 147 Mo. 39, 48-62, 47 S.W. 1058 (1898); <u>State v. Martin</u>, 216 S.C. 129, 140, 57 S.E.2d 55 (1949).

"However, in <u>Commonwealth v. Bermudez</u>, 370 Mass. 438, 348 N.E.2d 802, 805 (1976), the Supreme Judicial Court of Massachusetts was confronted with a situation similar to the case at bar. In <u>Bermudez</u> the defendant was convicted of second degree murder for the killing of his wife. The defendant told the police that he had been separated from his wife for approximately three weeks; he went to see her; while there he went upstairs to see their baby; and, when he came downstairs, his wife, using an obscenity, told him, 'I don't need you around here, I have got another man.' After once more using an obscenity, she told him to get out. He then pulled a gun and shot her. The Massachusetts court held that the wife's intimation that she had committed adultery did not constitute sufficient provocation to support a manslaughter verdict. Citing <u>Palmore v. State</u>, 283 Ala. 501, 508, 218 So. 2d 830 (Ala. 1969), that court stated:

> "'Past adultery lacks the peculiarly immediate and intense offense to a

spouse's sensitivities which has led courts to recognize present adultery as adequate provocation, and many courts have refused to recognize discovery of past adultery as sufficient provocation.'  [370 Mass. at 442,] 348 N.E.2d at 802.

"In the case at bar, no adulterous affair was discovered at the time of the shooting nor was there any mention by the deceased of any past specific act of adultery.  Mere suspicion, belief or knowledge of past adulterous affairs will not change the character of a homicide from murder to manslaughter.  State v. Ward, 286 N.C. 304, 210 S.E.2d 407 (1974)."

441 So. 2d at 992.

Even later in Speake v. State, 610 So. 2d 1238 (Ala. Crim. App. 1992), we acknowledged that the Alabama Supreme Court had never recognized any legal provocation sufficient to reduce a murder to heat-of-passion manslaughter unless the defendant actually caught his or her spouse in the act of adultery.  We also noted that Alabama did not follow the modern trend.  This Court stated:

"In Brunson v. State, 212 Ala. 571, 103 So. 664 (1925), the defendant shot the deceased after accusing the deceased of having 'just lain' with (the defendant's) wife.  The defendant requested the following jury charge:

"'If the jury believes from the evidence that immediately before the killing the defendant's wife and the deceased engaged in the act of sexual intercourse, and the circumstances then and there coming to the knowledge of the defendant apprised him of the fact, if it be a fact, then there was in the eyes of the law adequate provocation such as would reduce the crime to manslaughter, if the defendant acted in the heat of passion thereby aroused, and killed

the deceased while under the influence of such passion.'

"Brunson, 212 Ala. at 571, 103 So. at 665, 664. The Alabama Supreme Court held that the refusal of this requested charge was proper on the ground that '"[t]he law does not declare that any thing less than actual sexual intercourse is a sufficient provocation, as a matter of law, to reduce the offense from murder to manslaughter."' Brunson, 212 Ala. at 572, 103 So. at 665, quoting Hooks v. State, 99 Ala. 166, 168, 13 So. 767, 768 (1893).

"We note that '[t]he modern tendency is to extend the rule of mitigation beyond the narrow situation where one spouse actually catches the other in the act of committing adultery.' 2 W. LaFave and A. Scott, Substantive Criminal Law § 7.10(b)(5) (1986).

> "'The formerly well-established rule that words alone (or words plus gestures) will never do for reducing an intentional killing to voluntary manslaughter has in many jurisdictions changed into a rule that words also will sometimes do, at least if the words are informational (conveying information of a fact which constitutes a reasonable provocation when that fact is observed) rather than merely insulting or abusive words. Thus a sudden confession of adultery by a wife, or information from a third person that a wife has been unfaithful, has sometimes been held to constitute a provocation to the husband of the same sort as if he had made an "ocular observation" of his wife's adultery.'

"2 Substantive Criminal Law at § 7.10(b)(6) (footnotes omitted). See also Annot., 93 A.L.R.3d 925 (1979). Despite this 'modern tendency,' this

> Court is bound by the decisions of the Alabama Supreme Court. Ala. Code 1975, § 12-3-16."

610 So. 2d at 1240-41.

> This Court's decision in <u>Anderson</u> was inconsistent with the law as previously announced by the Alabama Supreme Court. As we noted in <u>Speake</u>, we are bound by the decisions of the Alabama Supreme Court. See § 12-3-16, Ala. Code 1975. We now take this opportunity to correct our error in <u>Anderson</u>. To the extent that our decision in <u>Anderson</u> conflicts with prior Alabama Supreme Court decisions that case is hereby overruled.

> Based on over 100 years of precedent we hold that no instruction on heat-of-passion manslaughter was warranted in this case because Knight did not catch his wife in the act of adultery. See <u>McGriff v. State</u>, [Ms. CR-97-0179, September 29, 2000] __ So. 2d __ (Ala. Crim. App. 2000); <u>Turner v. State</u>, 708 So. 2d 232 (Ala. Crim. App. 1997). The circuit court committed no error in denying Knight's request for an instruction on heat-of-passion manslaughter.

(Doc. 9, att. 15 at 13-20).

Having considered this issue *de novo*, the Court is satisfied that Petitioner has failed to show that he is entitled to habeas relief on this basis. The Eleventh Circuit recently stated that "[w]e review a district court's refusal to give a proposed jury instruction for abuse of discretion." <u>United States v. Cray</u>, 2012 WL 89951, *10 (11<u>th</u> Cir. 2012). "In determining whether the district court abused its discretion, we consider three factors: (1) whether the instruction is a substantially correct statement of the law; (2) whether the jury instruction given addressed the substance of the requested instruction; and (3) whether the defendant's ability to present an effective defense was seriously impaired by the court's failure to give the requested instruction." <u>Id.</u> (citing <u>United States v. Chirinos</u>, 112 F.3d 1089, 1101 (11<u>th</u> Cir. 1997).

This Court agrees with the Alabama Court of Criminal Appeals that, based upon the law of the state of Alabama, no instruction on heat-of-passion manslaughter was warranted in this

case.  Therefore, there was no error in this instance, and Petitioner is not entitled to habeas relief on the basis of Claim Two.

  II. <u>Claims Three-Fifteen: Ineffective Assistance of Counsel</u>

  In Claims Three through Fifteen, Petitioner asserts various claims of ineffective assistance of counsel, all of which Petitioner previously raised in his Rule 32 post-conviction proceedings in state court.  The Alabama Court of Criminal Appeals found that Petitioner's Claims Three, Four, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen were each insufficiently pleaded pursuant to <u>Alabama Rule of Criminal Procedure</u> 32.6(b),[5] with the remaining claims being denied on the merits.  In light of that finding, Respondent argues that Claims Three, Four, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen are now procedurally defaulted in this Court.  (Doc. 9 at 14).

  However, summary dismissals of constitutional claims pursuant to Rule 32.6(b) are considered to be adjudications on the merits, and therefore not procedurally barred.  <u>Frazier v. Bouchard</u>, 661 F.3d 519 (11th Cir. 2011); <u>Borden v. Allen</u>, 646 F.3d 785 (11th Cir. 2011); <u>Powell v. Allen</u>, 602 F.3d 1263 (11th Cir. 2010).  In <u>Borden v. Allen</u>, 646 F.3d 785, 812-13 (11th Cir. 2011), the Eleventh Circuit held that "[a] ruling by an Alabama court under Rule 32.6(b) is … a ruling on the merits."  The court explained that "in disposing of claims in the Amended Petition under Rule 32.6(b), [the Alabama Court of Criminal Appeals] necessarily considered the

---

  [5]Rule 32.6(b) of the Alabama Rules of Criminal Procedure provides that "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds.  A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."

sufficiency of such claims, focusing in on the factors for determining whether the petition presented a case sufficient to warrant relief under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." The Borden court also specifically discounted the previous decision Jenkins v. Bullard, 210 Fed. Appx. 895, 900-01 (11th Cir. 2006), which held that Rule 32.6(b) was an independent and adequate state ground to preclude review of ineffective assistance of counsel claims. Borden, 646 F.3d at 808, n. 27. The Borden court, in declining to follow Jenkins, stated that it was "unpersuaded" to follow that ruling, noting that Jenkins is an unpublished opinion which is not binding precedent. Id.

Subsequently, in Frazier v. Bouchard, 661 F.3d 519, 525 (11th Cir. 2011), the Eleventh Circuit again held that "because a dismissal under Rule 32.7(d) for failure to sufficiently plead a claim under Rule 32.6(b) requires an evaluation of the merits of the underlying federal claim, the Court of Criminal Appeals' determination was insufficiently 'independent' to foreclose federal habeas review." The court found that "the district court was not barred from considering the merits of the relevant claim." Id.

Therefore, this Court will review each rejection of Petitioner's ineffective assistance of counsel claims by the state court as holdings on the merits. Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners. See Henderson v. Campbell, 353 F.3d 880, 889 (11th Cir. 2003). Section 2254(d), as amended, provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of
> the evidence presented in the State court
> proceeding.

Id.  In Williams v. Taylor, 529 U.S. 362, 412 (2000), Justice O'Connor, writing for a majority of

the Court, recognized that "§ 2254(d)(1) places a new constraint on the power of a federal habeas

court to grant a state prisoner's application for a writ of habeas corpus with respect to claims

adjudicated on the merits in state court."

> A state-court decision is contrary to the Supreme Court's clearly
> established precedent (1) if the state court applies a rule that
> contradicts the governing law as set forth in Supreme Court case
> law, or (2) if the state court confronts a set of facts that are
> materially indistinguishable from those in a decision of the
> Supreme Court and nevertheless arrives at a result different from
> Supreme Court precedent.   See Williams v. Taylor, 529 U.S. 362,
> 120 S. Ct. 1495, 1519-20, 146 L. Ed. 2d 389 (2000).
>
> A state court decision involves an unreasonable application of
> Supreme Court precedent "if the state court identifies the correct
> governing legal rule from [Supreme Court] cases but unreasonably
> applies it to the facts of the particular state prisoner's case."
> Williams, 120 S. Ct. at 1520.  In addition, a state court decision
> involves an unreasonable application of Supreme Court precedent
> "if the state court either unreasonably extends a legal principle
> from [Supreme Court] precedent to a new context where it should
> not apply or unreasonably refuses to extend that principle to a new
> context where it should apply."  Id.

Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  Moreover, the Act presumes as correct

all determinations of factual issues made by a state court and places the burden upon the

petitioner of rebutting such a presumption of correctness by clear and convincing evidence.  28

U.S.C. § 2254(e).  Having established the proper standard of review, the Court turns to

Petitioner's claims.

19

The state court dismissed each of Petitioner's ineffective assistance of counsel claims, and the Alabama Court of Criminal Appeals affirmed the dismissal, noting first the standard for ineffective assistance of counsel claims as follows:

> Knight's claims regarding the ineffectiveness of counsel are evaluated pursuant to the two pronged test established in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
>
> "'In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):
>
>> "'"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
>
> "'466 U.S. at 687, 104 S. Ct. at 2064.
>
>> "'"The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under 'prevailing professional norms,' was 'reasonable considering all the circumstances.'" Daniels v. State, 650 So. 2d 544, 552 (Ala. Cr. App. 1994), cert. denied, [514 U.S. 1024, 115 S. Ct. 1375, 131 L. Ed. 2d 230 (1995)], quoting Strickland, 466 U.S. at 688, 104 S.

Ct. at 2065.   "A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066.

"'The claimant alleging ineffective assistance of counsel has the burden of showing that counsel's assistance was ineffective. Ex parte Baldwin, 456 So. 2d 129 (Ala. 1984), aff'd 472 U.S. 372, 105 S. Ct. 2727, 86 L. Ed. 2d 300 (1985).   "Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall 'outside the wide range of professionally competent assistance.'  [Strickland,] 466 U.S. at 690, 104 S. Ct. at 2066." Daniels, 650 So. 2d at 552.   When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that counsel's conduct was appropriate and reasonable.  Hallford v. State, 629 So. 2d 6 (Ala. Cr. App. 1992), cert. denied, 511 U.S. 1100, 114 S. Ct. 1870, 128 L. Ed. 2d 491 (1994); Luke v. State, 484 So. 2d 531 (Ala. Cr. App. 1985).   "This court must avoid using 'hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance." Hallford, 629 So. 2d at 9.  See also, e.g., Cartwright v. State, 645 So. 2d 326 (Ala. Cr. App. 1994).

"'"Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment

of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."

"'Strickland, 466 U.S. at 689, 104 S. Ct. at 2065 (citations omitted).  See Ex parte Lawley, 512 So. 2d 1370, 1372 (Ala. 1987).

"'"Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Strickland,] 466 U.S. at 694, 104 S. Ct. at 2068."

"'Daniels, 650 So. 2d at 552.'"

Dobyne v. State, 805 So. 2d 733, 742-44 (Ala. Crim. App. 2000), affirmed, Ex parte Dobyne, 805 So. 2d 733 (Ala. 2000).

(Doc. 9, att. 21 at 2-5).

### A.  Claim Three: Failure to Object to Venire Not Representing Fair Cross Section

Claim Three is Petitioner's first ineffective assistance of counsel claim, and in Claim Three, Petitioner argues that his counsel was ineffective for failing to object to the venire "not representing a fair cross section of the community in violation of Article I, section 6 of the Alabama Constitution of 1901 and the Sixth and Fourteenth Amendments to the United States Constitution." (Doc. 1 at 16).   Specifically, Petitioner contends that the venire excluded African Americans and physically disabled persons in violation of his rights.  Knight presented this same argument in his Rule 32 petition, and on appeal,  the Alabama Court of Criminal Appeals held the following:

> Here, Knight raised a number of ineffectiveness claims, based on counsel's failure to object to alleged errors, that were insufficiently pleaded.   Rule 32.6(b), Ala. R. Crim. P.   He contended that the jury pool did not represent a fair cross-section of the community because African-Americans and physically disabled persons were systematically excluded; however, he failed to plead the percentage of such categories of the population in the community.  Gholston v. State, [Ms. CR-07-0788, March 5, 2010] __ So. 3d __ (Ala. Crim. App. 2010).  He also failed to properly aver that this alleged under representation is due to systematic exclusion of this group, as he has failed to allege or plead the particular jury selection process used.

(Doc. 9, att. 21 at 10) (footnote omitted).

Having reviewed the record in this case, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner failed to establish that his counsel was ineffective in violation of the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to object to the venire not representing a fair cross section of the community.  To prevail on any of his claims of ineffective assistance of counsel, Petitioner bears the burden of establishing by a preponderance of the evidence that his trial and/or appellate counsel's performance was deficient

23

and that he was actually prejudiced by the inadequate performance.  <u>Strickland</u>, 466 U.S. 668.

The elements to be considered are as follows:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Id.</u>, 466 U.S. at 687.  Thus, Petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," <u>Strickland</u>, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'"  <u>Van Poyck v. Florida Dep't of Corrections</u>, 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995)).

An ineffective assistance of counsel claim is examined under the "totality of the circumstances."  <u>House v. Balkcom</u>, 725 F.2d 608, 615 (11th Cir. 1984).  An attorney's performance is presumed to have been reasonable and must not be examined with the aid of judicial hindsight.  <u>Messer v. Kemp</u>, 760 F.2d 1080, 1088 (11th Cir. 1985).  A federal court must apply a "heavy measure of deference to counsel's judgments."  <u>Singleton v. Thigpen</u>, 847 F.2d 668, 670 (11th Cir. 1988) (quoting <u>Strickland</u>, 446 U.S. at 691).

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial…. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

24

Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (quoting White v. Singletary, 972

F.2d 1218, 1220-21 (11th Cir. 1992)).  Petitioner cannot meet the heavy burden of showing

deficient performance and prejudice with regard to his allegations in Claim Three.

 Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals

was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. §

2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an

unreasonable application of, clearly established federal law.  See 28 U.S.C. § 2254(d)(1).

Therefore, Petitioner's claim that his constitutional rights were violated by his counsel's failure

to object to the venire not representing a fair cross section of the community, as alleged in habeas

Claim Three, is without merit.

  **B.  Claim Four:  Failure to Assert Batson Objection**

 In Claim Four, Petitioner argues that his attorney failed to assert a timely Batson

objection to the prosecutor's use of its preemptory strikes to exclude African Americans from

serving on the jury.  (Doc. 1 at 16).  Petitioner initially raised this in his Rule 32 petition, and on

appeal, the Alabama Court of Criminal Appeals denied the argument, stating the following:

> He also failed to sufficiently plead an alleged violation of
> Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69
> (1986), as his claim speculated that the prosecutor struck three
> African-Americans without any supporting facts.

(Doc. 9, att. 21 at 10).

 Having reviewed the record in this case, the Court agrees with the Alabama Court of

Criminal Appeals that Petitioner failed to establish that his counsel was ineffective, in violation

of the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to

assert a timely Batson objection to the prosecutor's use of its preemptory strikes to exclude

African Americans from serving on the jury.  As noted above, to prevail on any of his claims of ineffective assistance of counsel, Petitioner bears the burden of establishing by a preponderance of the evidence that his trial and/or appellate counsel's performance was deficient and that he was actually prejudiced by the inadequate performance.  <u>Strickland</u>, 466 U.S. 668.  Petitioner failed to meet his burden in <u>Strickland</u>, by failing to show deficient performance or prejudice as the result of any action by his counsel.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, <u>see</u> 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d)(1). Therefore, Petitioner's claim that his constitutional rights were violated by his counsel's failure to assert a timely <u>Batson</u> objection, as alleged in habeas Claim Four, is without merit.

## C.  Claim Five:  Failure to Object to Oath Administered by Court

In Claim Five, Petitioner argues that his counsel was ineffective for failing to object to the oath being administered to the jury by the trial court rather than by the clerk.  (Doc. 1 at 17-18).  Knight presented this same argument in his Rule 32 petition, and on appeal,  the Alabama Court of Criminal Appeals held the following:

> Knight claims that counsel should have objected to the administration of the oath to the jury by the trial court rather than the circuit clerk.  However, the State properly argued that this claim lacked merit because the record indicates, and Knight does not refute, that the venire was sworn.  § 12-16-173, Ala. Code 1975.  Thus, this issue is not jurisdictional.  Moreover, Rule 18.5, Ala. R. Crim. P., states that the trial court should either remind the petit jury of its prior oath or re-administer the oath.  Therefore, there was no error on this ground.  <u>See Ex parte Lee</u>, 989 So. 2d 504 (Ala. 2008).

(Doc. 9, att. 21 at 13).

Having reviewed the record in this case, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner failed to establish that his counsel was ineffective in violation of the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to object to the administration of the oath to the jury by the trial court.  To prevail on any of his claims of ineffective assistance of counsel, Petitioner bears the burden of establishing by a preponderance of the evidence that his trial and/or appellate counsel's performance was deficient and that he was actually prejudiced by the inadequate performance.  Strickland, 466 U.S. 668. This Petitioner cannot do.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law.  See 28 U.S.C. § 2254(d)(1). Therefore, Petitioner's claim that his constitutional rights were violated by his counsel's failure to object to the oath being given to the jury by the trial court, as alleged in habeas Claim Five, is without merit.

      D.   Claim Six: Failure to Object to Knight Being Absent During Critical Stage of Trial

In Claim Six, Petitioner argues that that his counsel was ineffective for failing to object to Knight not being present during "a critical stage of his trial."  (Doc. 1 at 18).  Knight presented this same argument in his Rule 32 petition, and on appeal, the Alabama Court of Criminal Appeals held the following:

> Knight also claimed that his trial counsel was ineffective for failing to object to the fact that Knight was not present during an allegedly critical stage of trial; specifically, when the trial court conducted a "Batson discussion."  (C. 26.)  Knight alleged in his

petition that his presence was necessary during this discussion because it was revealed at that time that the prosecutor had removed African American potential jurors from serving on the jury on the basis of their race, in violation of <u>Batson</u>.  (C. 27.)

However, the record from trial indicates that, at the time in question, the trial court recessed the jury for the day at 4:16 p.m. The record then states parenthetically that "[t]he following was held outside the presence of the jury at 4:19 p.m."  (Trial R. 701.) There is no indication that Knight left the courtroom at that time. The following then transpired:

> "THE COURT:  Okay.  Um, after the jury was struck both sides said they were satisfied with the jury panel and just out of an abundance of caution in the event any question would be raised at some point in the future, I wanted the record to reflect that of the 37 people that were qualified and composed the strike list, um, my notes reflect that out of the 37 that there were four African-Americans and, um –

> "[Prosecutor]:  I show five, Judge.

> "[Defense counsel]:  I think there were five.

> "THE COURT:  All right.  Well, I just have four down but I'll take y'all's word that there were five.

> "….

> "THE COURT:   And there was no <u>Batson</u> motion made and I just wanted to state for the record that had one been made I would have determined that, um, there was not a prima facia showing, but the Court does note that, um, that, um, juror Number 41, … had been prosecuted by the Baldwin County District Attorney's office approximately ten years ago and had the Court determined there was a prima facia showing the Court would have determined that that was a race neutral reason, and that, um, um, … juror number 52 –

> "[Defense counsel]:  Yes, sir, Judge.

28

"THE COURT:  -- had been also prosecuted by
the Baldwin County District Attorney's office and
that at the present time she was still on probation.
And—

"[Prosecutor]:   Yes,  sir.   Actually [potential
juror] was 58, Judge.  I wanted, if you're trying to
keep the record clear, I –

"THE COURT: Yeah, I am.

"[Prosecutor]:  -- wanted to make sure you had
that right.

"….

"THE COURT:  Well, I just wanted to include
that in the record in the event that some question is
raised at some point in the future.

"And we will reconvene at 9:00 in the morning.

"[Prosecutor]:  Did you want to address number
37 who was also African-American?

"THE COURT:  Well, at this point I don't have any
specific recollection of Erica Henderson.

"[Prosecutor]:  Yes, sir. Okay.

"(Recess held.)"

(Trial R. 701-04.)

   After this recess, the trial court discussed clerical errors
concerning the admission of certain exhibits.   Thereafter, the
following transpired:

"THE COURT:  …. And counsel for the State
and the Defense concur with that summation by the
Court concerning the status of exhibits?

"[Prosecutor]:  State concurs.

"[Defense counsel]:  Yes, sir, Judge, we concur.
Just for the record we note that the Defendant is not
present  in the courtroom at this time but we don't

29

view this as having been a critical portion of the
trial and, but rather a housekeeping detail, and we
would waive his presence for purposes of this.

"THE COURT:  Well, it was just a matter of
getting the record straight so there wouldn't be a
problem down the road.

"[Defense counsel]:  Yes, sir.

"(Evening recess was held at 4:53 p.m.)"

(Trial R. 705.)

Thus, the trial transcript does not show that Knight was absent
until after the discussion concerning the trial judge's statements as
to his reasons for not finding a prima facie case of discrimination
under Batson.  He was not definitively stated to be absent until
after the discussion concerning the improperly marked exhibits.
Furthermore, the record discloses that there was no indication of
improper striking of potential jurors based on race by the
prosecutor, as alleged by Knight.

At the hearing on his Rule 32 petition, one of Knight's trial
attorneys was questioned as to Knight's absence during the Batson
discussion.  Counsel stated that he did not remember a Batson
hearing and Knight's Rule 32 counsel then classified it as a
discussion.  Rule 32 counsel asked Knight's trial attorney if he
considered a "Batson hearing" as a critical stage of trial and he
responded:

"A.  Well, from a factual perspective, I doubt if I
would have presented any evidence from the
Defendant as to that fact, and it's largely a question
of numbers.  I don't know whether the record
reflects that I did or didn't make any Batson
objections.  But it would largely be a question of
numbers.

"You know, I-- I don't remember waiving his – I
don't remember waiving his presence but I would
normally be pretty sensitive to making sure my
client was there if I thought I had something
important, both because – not just because you want
the justice, but also because you want the Defendant
to know what's going on so that your client knows
what's happening, but – so I don't know what

30

objections that I made.  The answer to your question I guess is, I don't know.

"Q.   Well, not remembering whether he was there and refreshing your recollection at least stating that you waived his presence for it, and then I guess the only fair question that he raised was, he felt that he should have been present and was not asked whether he wanted to be present or not.

"Considering that it was a capital murder case, don't you think it would have been a critical phase, though?

"A.   I hate to sound like if I did, it must have been okay.  But again, I can't imagine that I would waive his presence if I thought that there was an important reason for him to be there, or unless I felt that there was another way of accomplishing whatever the problem might have been.

"So, you know, I don't know for sure because I can't see the record.  But in general I would say, if I waived his presence it would have been for a good reason.

"Again, I hate to say I wouldn't have done it if it wasn't the right thing to do, but that's the way I feel.  I wouldn't have done it if I didn't think that it was okay."

(R. 17-19.)

The record shows that there was no Batson hearing held because the trial court failed to find a prima facie showing of discrimination and the discussion was simply clarifying the reason that no Batson hearing was held.

Moreover, the record does not indicate definitively that Knight was not present for this discussion.  He was not stated to be absent until the close of the discussion as to the exhibits, which was had following a recess.  See Whitt v. State, 733 So. 2d 463, 481 (Ala. Crim. App. 1998) (Whitt argued that a juror made a belated answer to a voir dire question outside his presence; however, this court noted that "we cannot recognize factual assertations made in brief that are not disclosed or supported by the record; this court is bound by the record."  Moreover, "[a]lthough the record show[ed]

31

that during the hearing on the motion for new trial there was some discussion regarding a time during a recess when the appellant was not sitting at the defense table, the record f[ell] short of showing that the appellant was absent from the courtroom.").

The circuit court found in its order that the discussion was not a critical stage of the proceedings and that Knight's presence could not have added anything to the discussion. The circuit court then determined that Knight was not denied the effective assistance of counsel. This finding by the circuit court was proper.

(Doc. 9, att. 21 at 13-17) (footnote omitted).

Having reviewed the record in this case, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner failed to establish that his counsel was ineffective in violation of the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to object to his alleged absence during a discussion of possible Batson issues. To prevail on this claim of ineffective assistance of counsel, Petitioner bears the burden of establishing by a preponderance of the evidence that his trial counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. Strickland, 466 U.S. 668. Petitioner cannot meet this burden.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). Therefore, Petitioner's claim that his counsel was ineffective for failing to object to Petitioner's absence during a "critical" stage of trial, as alleged in Claim Six, is without merit.

E. Claim Seven:  Failure to Object to Admission of Hearsay

In Petitioner's Claim Seven, he contends that he was denied the effective assistance of counsel by his attorney's failure to object to the admission of hearsay evidence during his trial.

32

(Doc. 1 at 19).  Knight presented this argument in his Rule 32 petition, which was denied by the

trial court, and in denying the claim, the Alabama Court of Criminal Appeals held the following:

> [Knight] claims that his counsel was ineffective for failing to
> object to allegedly inadmissible hearsay.  However, the portion of
> the record that he cited concerns a confession of his intent to
> commit the offense that he made to a friend who was a witness at
> trial.  Therefore, it was not inadmissible hearsay.  See Q.J.S. v.
> State, 12 So. 3d 164, 165 (Ala. Crim. App. 2008) ("'Hearsay is a
> statement, other than one made by the declarant while testifying at
> the trial or hearing, offered in evidence  to prove the truth of the
> matter asserted.'  Rule 801(c), Ala. R. Evid.  'There are two
> methods whereby one may circumvent a hearsay objection.  The
> statement may qualify under one of the exceptions enumerated in
> Rule 803 or Rule 804 [of the Alabama Rules of Evidence].
> Additionally, however, the statement may be definitionally
> nonhearsay under Rule 801.'  Taylor v. State, 808 So. 2d 1148,
> 1193 (Ala. Crim. App. 2000), quoting McElroy's Alabama
> Evidence, § 242.01(1)(a)  (5th ed. 1996); see Rule 801(d), Ala. R.
> Evid. (providing that certain statements are 'not hearsay').").

> > "'It has been recognized that a person's design,
> > plan or intent to do a certain act is relevant to prove
> > that he did indeed do the particular act in question.
> > Among the ways of proving that he had the design
> > or plan is to show statements by him, prior to the
> > claimed act, indicating that he had the design.'  C.
> > Gamble, McElroy's Alabama Evidence (3d ed.
> > 1977), 262.01(2) (footnotes omitted).

> > > "'A statement by the accused,
> > > before the time of the alleged
> > > criminal act, asserting a design or
> > > emotion in him which points to his
> > > guilt is admissible against him as an
> > > admission.  Consequently, there is
> > > neither need nor occasion for the
> > > prosecution to rely upon the hearsay
> > > exception for a statement of one's
> > > own state of mind or emotion as the
> > > basis for proving such a statement.'

> "McElroy's, §264.01(1).  See also McElroy's , § 44.01."

33

> Salter v. State, 527 So. 2d 791, 793 (Ala. Crim. App. 1988). See
> also Fowler v. State, 562 So. 2d 666, 668 (Ala. Crim. App. 1989)
> ("the appellant's statement that 'the next time I'm going to kill
> him' evidences a design or emotion which points to her guilt, and
> was thus properly allowed into evidence as an admission. C.
> Gamble, McElroy's Alabama Evidence, § 264.01(1) (3d ed 1977);
> Smith v. State, 513 So. 2d 1036, 1044 (Ala. Cr. App. 1987).").

(Doc. 9, att. 21 at 11-12).

Having reviewed the record in this case, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner failed to establish that his counsel was ineffective in violation of the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to object to alleged inadmissible hearsay. To prevail on this claim of ineffective assistance of counsel, Petitioner bears the burden of establishing by a preponderance of the evidence that his trial counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. Strickland, 466 U.S. 668. Again, Petitioner cannot meet this burden.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). Therefore, Petitioner's claim that his constitutional rights were violated by his counsel's failure to object to the admission of hearsay evidence during his trial, as alleged in Claim Seven, is without merit.

F. Claim Eight: Failure to Move to Suppress Statement

In Claim Eight, Petitioner argues that his counsel was ineffective for failing to move to suppress his statement to authorities on the grounds that the statement was obtained while Knight suffered from a mental illness. (Doc. 1 at 19-20). Knight presented this argument in his Rule 32

petition, which was denied by the trial court, and in denying the claim, the Alabama Court of

Criminal Appeals stated the following:

> Knight contends that his counsel should have moved for his
> confession to be suppressed as it was involuntary and unknowing
> because he suffered from a mental disease or defect and alleges
> that the testimony of a defense expert supported his mental disease.
> However, this expert testified that he suffered from a brief
> psychotic episode (Trial R. 1440) and counsel pursued this heat of
> passion defense at trial.  (R. 7-8)  Thus, this claim lacks merit as
> there was no indication of mental disease that would have
> supported an involuntariness claim.

(Doc. 9, att. 21 at 12).

Having reviewed the record in this case, the Court agrees with the Alabama Court of

Criminal Appeals that Petitioner failed to establish that his counsel was ineffective in violation of

the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to

move to suppress Knight's confession.  Again, to prevail on this claim of ineffective assistance

of counsel, Petitioner must establish by a preponderance of the evidence that his trial counsel's

performance was deficient and that he was actually prejudiced by the inadequate performance.

Strickland, 466 U.S. 668.  Petitioner must demonstrate that his counsel's performance "fell

below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  Id. at 694.   This Petitioner cannot do.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals

was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. §

2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an

unreasonable application of, clearly established federal law.  See 28 U.S.C. § 2254(d)(1).

35

Therefore, Petitioner's claim that his constitutional rights were violated by his counsel's failure to move to suppress his statement as alleged Claim Eight, is without merit.

G.  Claim Nine:  Failure to Object to Trial Court's Failure to Define "Clear and Convincing Evidence"

In Claim Nine, Petitioner argues that that his counsel was ineffective for failing to object to the trial court's failure to define "clear and convincing evidence" in its oral instructions to the jury regarding Knight's burden with respect to the insanity defense.  (Doc. 1 at 20-21). Petitioner presented this same argument in his Rule 32 petition, and on appeal, the Alabama Court of Criminal Appeals held the following:

> Knight claims that the trial court improperly instructed the jury as to the burden of proof for an insanity plea by failing to instruct them on the clear and convincing evidence standard.  However, a review of the court's charge to the jury concerning the defense of mental disease establishes that it was complete and proper.  (Trial R. 1152-55.)  Thus, this claim lacks merit.

(Doc. 9, att. 21 at 12).

Having reviewed the record in this case, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner failed to establish that his counsel was ineffective in violation of the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to object to the trial court's alleged failure to define "clear and convincing" in its oral instructions to the jury regarding the insanity defense.  Again, to prevail on this claim of ineffective assistance of counsel, Petitioner must establish by a preponderance of the evidence that his trial counsel's performance was deficient and that he was actually prejudiced by the inadequate performance.  Strickland, 466 U.S. 668.  Petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688,

and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.   Again, this Petitioner cannot do.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law.  See 28 U.S.C. § 2254(d)(1).  Therefore, Petitioner's claim that his constitutional rights were violated by his counsel's failure to object to the trial court's alleged failure to define "clear and convincing evidence" in its oral instructions to the jury regarding Knight's burden with respect to the insanity defense, as alleged in Claim Nine, is without merit.

### H.  Claim Ten:  Failure to Object to Trial Court's Exclusion of Expert's Report

In Claim Ten, Petitioner contends that he was denied the effective assistance of counsel when his attorney failed to object to the trial court's exclusion of his expert's report into evidence.  (Doc. 1 at 22).  Petitioner presented this claim in his Rule 32 petition which was denied by the trial court, and on appeal, the Alabama Court of Criminal Appeals rejected the claim, stating the following:

> Knight's claim that his counsel was ineffective for failing to object to the trial court's refusal to allow the defense expert's report into evidence is insufficiently pleaded.  Knight alleges that trial counsel sought to introduce the report, but that the trial court refused to allow the report because the expert was available to testify as to its contents.  He has failed to allege how the report would have provided evidence not available through the expert's testimony.

(Doc. 9, att. 21 at 10).

Having reviewed the record in this case, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner failed to establish that his counsel was ineffective in violation of

the governing standard found in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), for failing to object to the trial court's exclusion of his expert's report into evidence at trial.  Again, to prevail on this claim of ineffective assistance of counsel, Petitioner must establish by a preponderance of the evidence that his trial counsel's performance was deficient and that he was actually prejudiced by the inadequate performance.  <u>Strickland</u>, 466 U.S. 668.  Petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," <u>Strickland</u>, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  Petitioner cannot meet the heavy burden as established in <u>Strickland</u>.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, <u>see</u> 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d)(1).  Therefore, Petitioner's claim that his constitutional rights were violated by his counsel's failure to object to the exclusion of Petitioner's expert's report into evidence at trial, as alleged in habeas Claim Ten, is without merit.

       I.  <u>Claim Eleven:  Failure to Call as Witness the Person With Whom the Victim Was Having Sexual Relationship</u>

In Claim Eleven, Knight claims that his counsel was ineffective for failing to call as a witness the person with whom his wife, the victim, was having a sexual relationship.  (Doc. 1 at 22-23).  Again, Petitioner presented this argument in his Rule 32 petition, and in rejecting this claim, the Alabama Court of Criminal Appeals stated:

> Knight's claim that counsel should have called the man with
> whom the victim was allegedly having an affair as a witness is

> insufficiently pleaded as he fails to support this bare allegation
> with any facts or testimony that the witness might have provided.

(Doc. 9, att. 21 at 10-11).

Having reviewed the record in this case, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner failed to establish that his counsel was ineffective in violation of the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to call as a witness the person that was allegedly having a sexual relationship with the victim. Again, to prevail on this claim of ineffective assistance of counsel, Petitioner must establish by a preponderance of the evidence that his trial counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. Strickland, 466 U.S. 668. Petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Again, Petitioner cannot meet the heavy burden as established in Strickland.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). Therefore, Petitioner's claim that his constitutional rights were violated by his counsel's failure to call as a witness the individual allegedly having an affair with the victim, as alleged in habeas Claim Eleven, is without merit.

J.   Claim Twelve: Failure to Move for Judgment of Acquittal

In Claim Twelve, Petitioner argues that he was denied the effective assistance of counsel by his attorney's failure to move for a judgment of acquittal on the grounds that Knight met his

burden of proving insanity at the time of the commission of the offense.  (Doc. 1 at 23).

Petitioner initially presented this argument in his Rule 32 petition, and it was denied, with the

Alabama Court of Criminal Appeals stating:

> Knight's argument that counsel was ineffective for failing to move for judgment of acquittal because Knight had satisfied his burden of proof as to the insanity defense is a bare allegation without any supporting facts.  Therefore, it is insufficiently pleaded.

(Doc. 9, att. 21 at 11).

Having reviewed the record in this case, the Court agrees with the Alabama Court of

Criminal Appeals that Petitioner failed to establish that his counsel was ineffective in violation of

the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to

move for a judgment of acquittal on the grounds that Petitioner met his burden of proving

insanity at the time of the commission of the offense.  Again, to prevail on this claim of

ineffective assistance of counsel, Petitioner must establish by a preponderance of the evidence

that his trial counsel's performance was deficient and that he was actually prejudiced by the

inadequate performance.  Strickland, 466 U.S. 668.  Petitioner must demonstrate that his

counsel's performance "fell below an objective standard of reasonableness," Strickland, 466 U.S.

at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."  Id. at 694.   Petitioner cannot meet this

burden.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals

was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. §

2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an

unreasonable application of, clearly established federal law.  See 28 U.S.C. § 2254(d)(1).

Therefore, Petitioner's claim that his constitutional rights were violated by his counsel's failure to move for a judgment of acquittal, as alleged in habeas Claim Twelve, is without merit.

### K.   Claim Thirteen:  Failure to Object to Trial Court's Instructions to Jury

In Claim Thirteen, Knight contends that his counsel was ineffective for failing to object to the trial court's burden shifting instructions to the jury.  (Doc. 1 at  23-24).  When presented with this argument in Knight's Rule 32 petition, the Alabama Court of Criminal Appeals stated the following:

> Knight's contention that counsel was ineffective for failing to object to the trial court's allegedly burden-shifting instructions is also insufficiently pleaded.  Knight quoted the trial court's instructions as to the insanity defense and the burden of proof. However, he failed to aver how these instructions allegedly shifted the burden of proof.

(Doc. 9, att. 21 at 11).

Having reviewed the record in this case, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner failed to establish that his counsel was ineffective in violation of the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to object to the trial court's burden shifting instructions to the jury regarding Knight's insanity defense.  Again, to prevail on this claim of ineffective assistance of counsel, Petitioner must establish by a preponderance of the evidence that his trial counsel's performance was deficient and that he was actually prejudiced by the inadequate performance.  Strickland, 466 U.S. 668. Petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  Petitioner cannot meet the heavy burden as established in Strickland.

41

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law.  See 28 U.S.C. § 2254(d)(1). Therefore, Petitioner's claim that his constitutional rights were violated by his counsel's failure to object to the burden shifting instructions given to the jury by the trial court, as alleged in habeas Claim Thirteen, is without merit.

L.    Claim Fourteen:  Failure to Raise for Appellate Review Knight's Objection to the Trial Court's Exclusion of Three Potential Jurors

In Claim Fourteen, Petitioner argues that his appellate counsel was ineffective for failing to raise for review Knight's objection to the trial court's exclusion of three potential jurors, excused for health reasons.  (Doc. 1 at 24-25).  Knight presented this same argument in his Rule 32 petition, and on appeal to the Alabama Court of Criminal Appeals.  In holding that the claim was properly denied,  the Alabama Court of Criminal Appeals stated the following:

> Knight also argued that his appellate counsel was ineffective by not raising on appeal the trial court's exclusion of three potential jurors from serving on the jury whom he alleges were removed for health reasons.  Knight argued that he objected to their removal at trial.  The State argued in its response that this issue was precluded as its underlying issue could have been raised on appeal; and because the claim did not meet the specificity requirements of Rule 32.6(b), Ala. R. Crim. P.
>
> The claims concerning ineffectiveness by Knight's appellate counsel were not raised at the evidentiary hearing and therefore no evidence or argument was presented as to these claims and no findings were required by the circuit court.  Rule 32.9(d), Ala. R. Crim. P.  Further, findings were not required because the claims were not facially meritorious as they raised no material issue of law or fact.  Rule 32.7(d), Ala. R. Crim. P.  The circuit court, however, did determine that the potential jurors were properly excused. (C. 80.)

…..

> Knight's claim of ineffectiveness based on the removal of the three potential jurors for health reasons did not meet the specificity requirements to show deficiency or prejudice. He does not show that his counsel acted below the reasonable performance of counsel for failing to raise this matter on appeal or that, had he done so, the result of his appeal would have been different. Thus, he failed to meet his burden under Strickland v. Washington, 466 U.S. 668 (1984) and Rule 32.

(Doc. 9, att. 21 at 8-9) (footnote omitted).

Having reviewed the record in this case, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner failed to establish that his appellate counsel was ineffective in violation of the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for failing to raise for review Knight's objection to the trial court excluding for health reasons three potential jurors from serving on Knight's jury. As in all the claims above, to prevail on this claim of ineffective assistance of counsel, Petitioner must establish by a preponderance of the evidence that his counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. Strickland, 466 U.S. 668. Petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. As the state court found, Petitioner cannot meet this burden.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). Therefore, Petitioner's claim that his constitutional rights were violated by his appellate

counsel's failure to raise for review Knight's objection to the exclusion of the three jurors, as alleged in Claim Fourteen, is without merit.

      M.  <u>Claim Fifteen:  Failure to Argue on Appellate Review the Trial Court's Error in Failing to Instruct the Jury on Heat-of-Passion Manslaughter as Lesser-included Offense of Capital Murder</u>

In Claim Fifteen, Petitioner argues that his appellate counsel was ineffective for failing to properly argue for appellate review the trial court's error in failing to instruct the jury on heat-of-passion manslaughter as a lesser-included offense of capital murder.  (Doc. 1 at 25-26).  Knight presented this same argument in his Rule 32 petition, and on appeal, the Alabama Court of Criminal Appeals held the following:

> Knight alleged that his appellate counsel was ineffective for failing to argue that trial counsel should have requested the jury to be instructed on heat of passion manslaughter as a lesser included offense.  The State in its response determined that this argument was precluded because Knight raised the subjective issue underlying this claim on appeal and this court held that "[b]ased on over 100 years of precedent we hold that no instruction on heat-of-passion manslaughter was warranted in this case because Knight did not catch his wife in the act of adultery."  <u>Knight v. State</u>, 907 So. 2d at 479.
>
> …..
>
> Knight's claim as to ineffectiveness due to appellate counsel's failure to challenge trial counsel's failure to request a lesser included instruction on heat of passion manslaughter is also insufficiently specific to show deficiency or prejudice.  On appeal, he admits that his appellate counsel raised the substantive issue which was decided adversely to him based on strong and consistent precedent.   He contends however that appellate counsel should have argued "that the Alabama Supreme Court [should] change its judicial precedent in this area."  (Knight's brief on appeal 18.)  The appeal was to this court which is bound by the decisions of the Alabama Supreme Court.  "This Court is bound by decisions of the Alabama Supreme Court, see § 12-3-16, Ala. Code 1975, and 'is without authority to overrule the decisions of [that] court.'  <u>Jones v. City of Huntsville</u>, 288 Ala. 242, 244, 259 So. 2d 288, 290 (1972)."   <u>Williams  v.  State</u>, [Ms. CR-07-1439, December 18,

2009] __ So. 3d __, __ (Ala. Crim. App. 2009). Therefore, there
has been no showing of deficient performance or prejudice, and
Knight has failed to show ineffectiveness by his counsel on appeal.

(Doc. 9, att. 21 at 8-9).

Having reviewed the record in this case, the Court agrees with the Alabama Court of

Criminal Appeals that Petitioner failed to establish that his appellate counsel was ineffective in

violation of the governing standard found in Strickland v. Washington, 466 U.S. 668 (1984), for

failing to raise for review the trial court's alleged error in failing to instruct the jury on heat-of-

passion manslaughter as a lesser included offense of capital murder. Again, as in all the claims

above, to prevail on this claim of ineffective assistance of counsel, Petitioner must establish by a

preponderance of the evidence that his counsel's performance was deficient and that he was

actually prejudiced by the inadequate performance. Strickland, 466 U.S. 668. Petitioner must

demonstrate that his counsel's performance "fell below an objective standard of reasonableness,"

Strickland, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Petitioner cannot meet this burden.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals

was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. §

2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an

unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1).

Therefore, Petitioner's claim that his constitutional rights were violated by his appellate

counsel's failure to raise for review the trial court's error in failing to instruct the jury on heat-of-

passion manslaughter as a lesser-included offense of capital murder, as alleged in Claim Fifteen,

is without merit.

III.   Claims Sixteen and Seventeen

Claims Sixteen and Seventeen are both procedurally defaulted as a result of Petitioner not raising them properly in the state courts.  Before a federal court considers a habeas petition presented by a state prisoner, the court must first determine whether the petitioner has properly presented the issues to the state courts. A state prisoner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See also 28 U.S.C. § 2254(b)(1) (a prisoner in state custody shall not be granted a writ of habeas corpus unless the prisoner "has exhausted the remedies available in the courts of the State."). The exhaustion doctrine requires that a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. In Alabama, the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to the Alabama Court of Criminal Appeals, and an application for discretionary review by the Alabama Supreme Court. See Ala. R. App. P. 4, 39–40.

A state prisoner's failure to present his claims to the state courts in the proper manner results in a procedural default of those claims. O'Sullivan, 526 U.S. at 848. The doctrine of procedural default, as it relates to petitions filed under 28 U.S.C. § 2254, arises from principles of comity and federalism. Francis v. Henderson, 425 U.S. 536, 541 (1976). A federal court "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." Harris v. Reed, 489 U.S. 255, 260 (1989). A

46

violation of a state procedural rule is adequate to foreclose federal review if the rule is "firmly

established and regularly followed." <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002).

 "To determine whether a state court's procedural ruling constitutes an independent and

adequate state rule of decision," the Eleventh Circuit "has set forth the following three-part test:

(1) 'the last state court rendering a judgment in the case must clearly and expressly state that it is

relying on state procedural rules to resolve the federal claim without reaching the merits of that

claim"[; (2)] the state court's decision must rest solidly on state law grounds, and may not be

'intertwined with an interpretation of federal law[;]' and (3) the state procedural rule must not be

applied in an arbitrary or unprecedented fashion." <u>Mason v. Allen</u>, 605 F.3d 1114, 1119-20 (11th

Cir. 2010) (quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)).

 Once a federal claim is procedurally defaulted in state court, a state habeas petitioner "is

procedurally barred from pursuing the same claim in federal court absent a showing of cause for

and actual prejudice from the default." <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302 (11th Cir. 1999)

(citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977)). "[C]ause for a procedural default must

ordinarily turn on whether the prisoner can show that some objective factor external to the

defense impeded counsel's efforts to comply with the State's procedural rule" or that the

procedural default was the result of ineffective assistance of counsel. <u>Murray v. Carrier</u>, 477 U.S.

478, 488 (1986).  Prejudice, in this context, means a reasonable probability that the outcome

would have been different. <u>Jenkins v. Bullard</u>, 210 Fed. Appx. 895, 898–901 (11th Cir. 2006)

(per curiam). A petitioner must show "not merely that the errors at his trial created a *possibility*

of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire

trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)

(emphasis in original). In the absence of a showing of cause and prejudice, the court may yet

consider a procedurally defaulted claim if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." Smith v. Murray, 477 U.S. 527, 537–38 (1986). Absent one of these exceptions, however, procedurally defaulted claims cannot be raised in federal habeas corpus petitions. Kelley v. Secretary for the Dep't of Corrs., 377 F.3d 1317, 1343–45 (11th Cir. 2004).

A.  Claim Sixteen:  Trial Court Without Jurisdiction Because Indictment Was Void

In Claim Sixteen, Petitioner argues that the trial court was without jurisdiction to render judgment or to impose sentence because Knight's indictment was void and based upon the impermissible and discriminatory acts of the prosecutor.  (Doc. 1 at 26-28).  Petitioner presented this same argument in his Rule 32 petition, and on appeal, the Alabama Court of Criminal Appeals held the following:

> Knight's final jurisdictional claim alleges that the trial court lacked jurisdiction because his indictment was void.  He contends that the prosecutor singled him out for prosecution for racial reasons.  This claim is not jurisdictional and therefore it could have been raised at trial as argued by the State in its response.  Rule 32.2(a)(3), Ala. R. Crim. App.  Moreover, as noted by the State in its response, Knight failed to allege any specific facts to support this claim.
>
> Again, the circuit court did not enter specific findings as to this issue from the hearing; however, no evidence was introduced or argued as to this matter.
>
> Because none of the claims that Knight couched in jurisdictional terms were actually jurisdictional matters, they were all subject to preclusion.

(Doc. 9, att. 21 at 8).

As noted above, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court" by giving the state court "a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the

federal courts." O'Sullivan, 526 U.S. 838, 842, 845 (1999). A state prisoner's failure to present

his claims to the state courts in a timely and proper manner results in a procedural default of

those claims. Id. at 848. "In all cases in which a state prisoner has defaulted his federal claims

in state court pursuant to an independent and adequate state procedural rule, federal habeas

review of the claims is barred unless the prisoner can demonstrate cause for the default and

actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson,

501 U.S. 722, 750 (1991).

   Alabama Rule of Criminal Procedure 32.2(a)(3) has been held to be an independent and

adequate state law ground.[6] See Borden v. Allen, 646 F.3d 785, 815 (11th Cir. 2011) (finding

claims procedurally defaulted pursuant to Rule 32.2 and comparing Rule 32.2 and Rule 32.6(b)

and noting that "the Alabama courts appear fully capable of utilizing adequate and independent

state procedural rules to avoid review of federal claims when they wish to do so."); Mason v.

Allen, 605 F.3d 1114, 1121 (11th Cir. 2010) ("The Alabama court's ruling is based on an

independent and adequate ground," referencing Alabama Rule of Criminal Procedure 32.2.).

Therefore, Petitioner's claim is defaulted in state court pursuant to an independent and adequate

state procedural ground and is barred in this Court absent a showing of cause and prejudice or a

fundamental miscarriage of justice. Because Petitioner has failed to even allege cause and

---

   [6]Rule 32.2(a)(3) of the Alabama Rules of Criminal Procedure states as follows:

   "(a) Preclusion of Grounds. A petitioner will not be given relief under this rule
   based upon any ground:

      (3) Which could have been but was not raised at trial, unless the ground
      for relief arises under Rule 32.1(b).

prejudice related to his procedural default of Claim Sixteen, and because there is no basis for

finding a fundamental miscarriage of justice, review of Petitioner's habeas Claim Sixteen is

barred in this Court, and that claim is due to be dismissed.[7]

   B.   Claim Seventeen:  Conviction Void Because Alabama Insanity Statute
        Unconstitutional

In Claim Seventeen, Petitioner argues that his conviction is void as the Alabama insanity

defense statute violates the Due Process Clause of the Fourteenth Amendment of the

Constitution by placing a higher burden of proof on the defendant than required by the

Constitution and impermissibly relieving the State of its burden of proof with respect to an

essential element of the crime charged.  (Doc. 1 at 28-29).  Petitioner presented this same

argument in his Rule 32 petition, and on appeal, the Alabama Court of Criminal Appeals held the

following:

> Similarly, Knight's contention that Alabama's insanity statutes
> are unconstitutional was raised by Knight on direct appeal under
> equal protection and due process challenges.  Knight v. State,  907
> So. 2d at 479-81.  Here, he claims that the statutes relieve the State
> of part of its burden of proof as to an essential element without
> specifying the element.   The basis of his arguments raised on
> appeal concerned the elimination of the volition prong in the
> definition of insanity.   If that is the present alleged essential
> element, then this issue has already been addressed on appeal.
> Therefore, if that is his specific contention here, this matter has
> already been addressed.   If volition is not the alleged essential
> element, this claim could have been raised at trial or on appeal, and
> is precluded by Rule 32.2(a)(3) and (5).
>
> Although the circuit court did not specifically address this issue
> after having held an evidentiary hearing, this issue was not argued
> by Knight at the hearing.   Cf. Rule 32.9(d), Ala. R. Crim. P.
> (requiring, when there has been an evidentiary hearing, that "[t]he

---

[7] While Petitioner does mention cause in his Response to Respondent's Answer, he does
not assert it as to this claim.  (Doc. 13 at 3).

court shall make specific findings of fact relating to each material issue of fact presented.").  Knight's Rule 32 counsel asked one of Knight's trial attorneys about the definition of the standard of proof for insanity in an ineffectiveness of counsel context, asking:

> "And, um, it's quite difficult to wrap my head around this particular argument, but he claims that there was a failure to argue or ask for a clear and – a definition of the clear and convincing evidence standard as it applied to his insanity defense.
>
> "Did you object to any definition of that provided by the Court as sufficient or insufficient?"

(R. 13.)  This question, which did not concern an element of proof of insanity, was the only mention of a defect as to a definition of insanity's burden of proof.  The question was unclear and was never explained by Rule 32 counsel or addressed.  Thus, the jurisdictional claim was not presented by Knight at the hearing and no facts were presented that would have required a specific finding by the circuit court.

(Doc. 9, att. 21 at 6-7) (footnotes omitted).

Again, as noted above, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court" by giving the state court "a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts."  O'Sullivan, 526 U.S. 838, 842, 845 (1999).  A state prisoner's failure to present his claims to the state courts in a timely and proper manner results in a procedural default of those claims.  Id. at 848.  "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Alabama Rule of Criminal Procedure 32.2(a)(3) and (5) has been held to be an independent and adequate state law ground.[8] See Borden v. Allen, 646 F.3d 785, 815 (11th Cir. 2011) (finding claims procedurally defaulted pursuant to Rule 32.2 and comparing Rule 32.2 and Rule 32.6(b) and noting that "the Alabama courts appear fully capable of utilizing adequate and independent state procedural rules to avoid review of federal claims when they wish to do so."); Mason v. Allen, 605 F.3d 1114, 1121 (11th Cir. 2010) ("The Alabama court's ruling is based on an independent and adequate ground," referencing Alabama Rule of Criminal Procedure 32.2.). Therefore, Petitioner's claim is defaulted in state court pursuant to an independent and adequate state procedural ground and is barred in this Court absent a showing of cause and prejudice or a fundamental miscarriage of justice. Because Petitioner has failed to even allege cause and prejudice related to his procedural default of this claim, and because there is no basis for finding a fundamental miscarriage of justice, review of Petitioner's habeas Claim Seventeen is barred in this Court, and that claim is due to be dismissed.[9]

_____

[8] Rule 32.2(a)(5) of the Alabama Rules of Criminal Procedure states as follows:

> "(a) Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:

>> (5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b).

[9] Again, just as in Claim Sixteen, while Petitioner does mention cause in his Response to Respondent's Answer, he does not assert it as to Claim Seventeen.  (Doc. 13 at 3).

CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows ... that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893 (1983) ], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

None of Petitioner's claims warrants the issuance of a Certificate of Appealability in this case.  For the reasons discussed above with respect to Petitioner's claims, reasonable jurists could not debate whether any of his claims should be resolved in a different manner or were adequate to deserve encouragement to proceed further on the merits.  The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented.  It is thus recommended that the Court deny any request for a Certificate of Appealability.  Because Petitioner is not entitled to a Certificate of Appealability, any request for leave to appeal *in forma pauperis* is likewise due to be denied.[10]

## CONCLUSION

Based on the foregoing, it is the opinion of the undersigned Magistrate Judge that Petitioner's constitutional rights were not violated in this case.  Therefore, it is recommended that Petitioner's petition for a writ of habeas corpus be denied, that this action be dismissed, and that judgment be entered in favor of the Respondent, Tony Patterson, and against the Petitioner,

---

[10] The guidelines for proceeding *in forma pauperis* are set forth in 28 U.S.C. § 1915.  An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); see Fed. R. App. P. 24(a)(3)(A); Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that "good faith" is "an objective concept" and that "not taken in good faith" is "a synonym for frivolous"); DeSantis v. United Techs., Corp., 15 F. Supp. 2d 1285, 1288-89 (M.D. Fla. 1998) (stating that good faith "must be judged by an objective, not a subjective, standard" and that an appellant "demonstrates good faith when he seeks appellate review of any issue that is not frivolous").  An appeal filed *in forma pauperis* is frivolous if it appears that the appellant "has little or no chance of success," meaning that the "factual allegations are 'clearly baseless' or that the legal theories are 'indisputably meritless.'" Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted).  For the reasons previously stated in addressing the Certificate of Appealability, the undersigned concludes that an appeal in this case would be without merit and would not be taken in objective good faith.  Thus, Petitioner is neither entitled to a Certificate of Appealability nor to appeal *in forma pauperis*.

Gregory D. Knight.  It is further recommended that any motion for a Certificate of Appealability or for permission to appeal *in forma pauperis* be denied.

      The attached sheet contains important information regarding objections to this Report and Recommendation.

      DONE this   20th  day of April, 2012.

/s/ Katherine P. Nelson_____
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[11] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

---

[11]   Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).